UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-2615 (DSD/JMM)

Amtrust Incorporated, a Wyoming corporation, as Trustee of the Lindana Amthor Bolanos Texas Trust,

Plaintiff,

v.

**ORDER**

Roger C. Larson, individually, the United States of America, Evelyn M. Larson, individually, Phalen Park State Bank, Wells Fargo Bank Minnesota, NA (f/k/a Norwest Bank Minnesota, NA) and Clarica Life Insurance Company - US (f/k/a TMG Life Insurance Co.), a North Dakota corporation,

Defendants,

and

Roger C. Larson,

Third-Party Plaintiff,

v.

Tawakoni Land & Development Company, a Texas corporation,

Third-Party Defendant.

Paul L. Ratelle, Esq., Daniel J. McGarry, Esq. and Fabyanske, Westra & Hart, 920 2nd Avenue South, Suite 1100, Minneapolis, MN 55402 and Bruce R. Elworthy, Esq., Elworthy & Marshall, 1001, Pioneer, Sheridan, WY 82801, counsel for plaintiffs.

FILED 8-20-01
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. ______
Deputy Clerk's Initials ______

Valdis A. Silins, Esq. and Stephenson & Sanford, 501 Marquette Avenue, Suite 1440, Minneapolis, MN 55402, counsel for defendant Roger C. Larson.

Roylene A. Champeaux, Assistant United States Attorney, 600 U.S. Courthouse, 300 South 4th Street, Minneapolis, MN 55415, counsel for defendant United States.

Stephen Kelly, Esq. and Kelly & Fawcett, 444 Cedar Street, Suite 2350, St. Paul, MN 55101, counsel for defendant Evelyn M. Larson.

This matter is before the court on the motion of defendant Roger Larson for summary judgment and the motion of plaintiff Amtrust Incorporated for partial summary judgment. Based on a review of the file, record, and proceedings herein, the court denies defendant's motion and denies plaintiff's motion.

**BACKGROUND**

On May 7, 1991, Roger Larson, together with Larson's two companies, Minnesota Package Products, Co., Inc. (MPP) and Mid-American Holding Co., Inc. (Mid-American), executed a note in the amount of $275,000, to be paid to Tawakoni Land & Development Company (TL&D). The note renewed and extended the balance of $175,000 that Larson and Mid-American owed TL&D on several prior notes and advanced an additional $100,000 to Mid-American. The note carried an annual interest rate on the unpaid principal of thirteen and one-half percent and contained a payment schedule

which allowed for interest only payments from November through April of each year for the life of the note. The unpaid balance of the note was due October 1, 1996. The note was secured by the business assets of MPP and Mid-American, which owned and operated a swimming pool company under the name "Pacific Pool and Patio." The collateral included vans, pickup trucks, bobcats, inventory, furniture, fixtures and accounts receivable.

Larson alleges that he and his companies made payments on the note, but in September 1991, MPP, doing business as Pacific Pool and Patio, filed for Chapter 7 bankruptcy. Larson asserts that he advised Gino D'Amalfi, one of the owners and managing officers of TL&D, that the bankruptcy filing was imminent, at which point D'Amalfi allegedly asked Larson to give TL&D a mortgage on real property owned by Larson in Washington County, Minnesota. According to Larson, D'Amalfi told him that the mortgage was necessary to satisfy TL&D's creditors and that TL&D would never collect on the mortgage because it would accept Larson's business assets in full satisfaction of the $275,000 loan. Larson asserts that, based on D'Amalfi's promises, he executed a mortgage in the amount of $275,000 due October 1, 1996 in favor of TL&D. The mortgage, which encumbered several parcels of property totaling approximately 318 acres, recites that it was given to secure the note which had been executed in May 1991. The mortgage was filed with the Washington County Recorder's Office on October 30, 1991.

In the spring of 1992, TL&D commenced liquidation of Pacific Pool's assets. According to TL&D figures from that time period, Larson, Pacific Pool and its related entities owed at least $272,000 to TL&D under the secured note. TL&D sold off or removed most of the secured collateral provided by Pacific Pool, but TL&D did not foreclose on the mortgage. However, in May 1992, Clarica Life Insurance Company ("Clarica") commenced a foreclosure action against MPP on a separate promissory note, mortgage and guaranty. On September 16, 1992, the Washington County court entered default judgment in favor of Clarica against Larson in the amount of $834,110.19 and ordered foreclosure of Larson's property.

In July 1998, Clarica settled with Larson on the default judgment for $25,000. As part of the settlement agreement, Larson provided to Clarica a statement of all of Larson's assets and liabilities. Included on the list of liabilities was the note payable to TL&D, secured by the "house and farm," with a balance due of $335,000. (McGarry Aff. Ex. B.)

In late 1998, TL&D assigned its interest in the mortgage to Amtrust, Incorporated. Amtrust asserts that despite Larson's representations to third parties that he owes on this debt, he has made no attempt as the mortgagor to rectify the delinquency. According to Amtrust, the total amount of outstanding principal and interest exceeds $464,000. Amtrust filed this lawsuit to collect on the mortgage. Larson moves for summary judgment, arguing that

the mortgage is invalid because Larson obtained nothing of value or benefit in consideration for the mortgage and because the statute of limitations under which Amtrust could pursue collection has expired. Amtrust counters with its own motion for partial summary judgment to establish the validity of the mortgage and the minimum amount due.

**DISCUSSION**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating to the court that no genuine issue of material fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 250.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support

each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. See id. at 322-23. With this standard at hand, the court considers the parties' cross-motions for summary judgment.

**I. Choice of Law Analysis**

The parties dispute whether Minnesota or Texas law should be applied to the determination of whether the mortgage is valid, therefore, at the outset the court must engage in a choice of law analysis. The threshold issue in a choice of law analysis is whether application of one state's law over another is "outcome determinative" or creates an actual conflict. Jepson v. General Cas. Co., 513 N.W.2d 467, 469 (Minn. 1994). In this case, Larson relies on the Minnesota case, Baker v. Citizens State Bank, 349 N.W.2d 553 (Minn. 1984), which unequivocally establishes that pre-existing debt without new advances or forbearance of debt is not sufficient consideration to validate a mortgage. A cursory review of Texas law yields less clarity on this issue. Compare Quinn v. Dupree, 303 S.W.2d 769, 772-773 (Tex. 1957) (noting that "a pre-existing liability is sufficient consideration to support a mortgage given as security therefor, and there need not be a new consideration at the time of making the mortgage") with McGahey v. Ford, 563 S.W.2d 857, 863 (Tex. Ct. Civ. App. 1978) (holding that a mortgage taken to secure a pre-existing debt does not entitle the

mortgagee to the position of a bona fide purchaser for value) and Steffian v. Milmo Nat. Bank, 6 S.W. 823, 824 (Tex. 1888) ("There being no new consideration, should the grantee or mortgagee loose the land or his lien upon it, he still has his debt; and for that reason is held to have parted with nothing of value."). Based on this uncertain body of law in Texas, the court believes it prudent to conclude that an actual conflict may exist between Texas and Minnesota law.

In addition, the court finds that each state has sufficient contacts with the matter in dispute so that each state's law can be constitutionally applied in this case. See Jepson, 513 N.W.2d at 469. Larson is a Minnesota resident and his real property covered by the mortgage is located in Minnesota. However, TL&D maintains an office in Texas and the secured collateral which was not sold during liquidation proceedings was removed to Texas. While the Texas contacts appear to be less significant, the court concludes that a choice of law analysis is appropriate.

A federal court sitting in diversity is bound to apply the choice of law principles of the forum state. See American Cas. Co. v. Bank of Montana Sys., 675 F. Supp. 538, 545 (D. Minn. 1987). Thus, the court will follow the choice-establishing factors adopted in Milkovich v. Saari, 203 N.W.2d 408, 412 (Minn. 1973): (1) expectation of the parties and predictability of results; (2) maintenance of interstate and international order;

(3) simplification of judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law.

Amtrust suggests that because the modification agreement and security agreement signed on May 7, 1991, designate Texas law as controlling, the parties should have predicted that Texas law would apply to any issues arising under the mortgage. However, the note signed that same day contains no such language and the mortgage, which indicates only that it secures the note, specifies that "this security instrument shall be governed by the federal law and the law of the jurisdiction in which the Property is located." (Larson Aff. Ex. F.) Larson's property is located in Minnesota, therefore Minnesota's procedural rules should apply to any issues arising under the mortgage, be it foreclosure or the validity of the mortgage itself. Accordingly, the predictability factor weighs in favor of applying Minnesota law over Texas law.

With respect to the advancement of the forum's governmental interest, application of this factor requires analysis, not only of the forum state's interest, but also the public policies of the sister state. <u>See</u> <u>id.</u> Texas has demonstrated less interest than Minnesota in this area of law because its courts have not issued a conclusive statement regarding the need for consideration in post-debt mortgages. In fact, the absence of a definitive body of law also implicates the second factor, maintenance of interstate order,

which is "concerned with whether the application of [one state's] law would manifest disrespect for [the other state's] sovereignty or impede the interstate movement of people and goods." Jepson, 513 N.W.2d at 471. In this case, where a mortgage regarding Minnesota property was drafted and signed in Minnesota by a Minnesota resident, and the courts of this state have spoken directly on the issue at hand, Minnesota has a clear interest in the resolution of this dispute according to Minnesota law. Moreover, it is unlikely that the application of Minnesota law would negatively impact the policies or concerns of the state of Texas.

The other two factors are not significant in this case. First, the court believes that neither state's scheme represents a "better rule of law." Although Minnesota's clear pronouncement regarding the importance of adequate consideration is in line with fundamental real estate and contract law, there is support in the Restatement (Third) of Property, Mortgages § 1.3 for a contrary position. With respect to simplification of the judicial task, the law of either state could be applied without difficulty, although the conflicting pronouncements from Texas state courts would require careful review. In sum, the court concludes that Minnesota rather than Texas law should govern the determination of the validity of the mortgage and Amtrust's rights to enforce its interests at this late date.

## II. Analysis of the Merits

### A. Validity of the Mortgage

Larson contends that Amtrust's claim must be dismissed as a matter of law because TL&D advanced no additional consideration beyond the pre-existing loans to obtain the mortgage. Amtrust counters that TL&D did offer additional value by agreeing to forbear on the foreclosure of Pacific Pools assets until the spring of 1992. Amtrust further asserts that Larson's statements to Clarica in 1998 provide definitive proof of the validity and enforceability of the mortgage.

Evidence of forbearance is presented to the court through the affidavit testimony of Harry Myers, a former officer and director of TL&D. Myers, who is a certified public accountant, asserts that in 1991 TL&D asked him to determine whether Pacific Pool was in compliance with the May 7th modification agreement. The agreement required Pacific Pool to maintain "loan to collateral value," that is, to preserve the value of the assets which secured the loan. (Myers Aff. ¶ 2.) According to Myers, when he completed his analysis he reported to D'Amalfi and Pacific Pool that the TL&D loan was under-collateralized and that a principal pay-down would be necessary. (Id. ¶ 6.) However, Pacific Pool did not have sufficient resources to complete a pay-down, therefore Myers recommended immediate liquidation. (Id. ¶ 7.) Myers avers that Larson requested forbearance from TL&D so that he could sort out

the affairs of Pacific Pool and further attempt to maximize the value of the collateral in order to reduce his debt to TL&D. (Id.)

According to Myers, it was at this point that D'Amalfi agreed to accept Larson's mortgage in exchange for his agreement to defer commencement of liquidation proceedings. (Id. ¶ 8.) Amtrust contends that this forbearance constitutes sufficient consideration for the mortgage.

Larson challenges Myers's testimony as inadmissible hearsay and secondhand knowledge and also in violation of the statute of frauds.[1] Although the court reserves to a later date its final ruling on the admissibility of Myers testimony, his affidavit contains assertions which appear to be sufficiently grounded in personal knowledge to create a genuine fact issue as to whether the mortgage was supported by additional consideration.

Likewise, Larson's statements in the 1998 settlement agreement with Clarica about the mortgage undercut his arguments that D'Amalfi promised to never foreclose on the mortgage. In short, the court believes that the arguments proffered by both parties about the 1991 negotiations between Larson and TL&D are best left for a jury to evaluate. Therefore, the court concludes that summary judgment for either party on the issue of the validity of the mortgage is inappropriate.

---

[1] Unfortunately, D'Amalfi died in 1997 so the trier-of-fact will not have the benefit of his perspective on the discussions of 1991.

**B. Statute of Limitations**

Larson contends that Amtrust's claim violates the six years limitations period for the collection of a promissory note. Minn. Stat § 541.05, subd. 1. However, Amtrust's action is a real property foreclosure, and the statute of limitations for such actions is 15 years from the date of maturity on the mortgage. Minn. Stat. § 541.03, subd. 1. The mortgage at issue here has a maturity date of October 1, 1996, therefore there can be no dispute that this foreclosure action is timely. Summary judgment on this basis is denied.

**CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendant Roger Larson's motion for summary judgment is denied.

2. Plaintiff Amtrust Incorporated's motion for partial summary judgment is denied.

Dated: August 20, 2001

David S. Doty, Judge
United States District Court

# Please forward this announcement to the recipient of this fax.

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

## For additional information on either program please visit our website at www.mnd.uscourts.gov.

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500