UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Amtrust, Inc., a Wyoming Corp., as Trustee of the Linda Amthor Bolanos Texas Trust,

Plaintiff,

v.

Roger C. Larson,

Defendant.

Civil No. 00-2615 (DSD/FLN)

**REPORT AND RECOMMENDATION**

---

Paul Ratelle for Plaintiff.
Keith Johnson for Defendant.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on February 20, 2003 on Plaintiff's Motion for an Award of Attorney Fees [#192]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons which follow, this Court recommends that Defendant's Motion be **GRANTED in part** and **DENIED in part**, and that Amtrust Inc., be awarded $334,775.94.

## I. BACKGROUND

In 1991, Defendant Roger Larson signed a note evidencing indebtedness in the principal amount of $275,000 to be paid to Tawakoni Land & Development Co. (TLD). The note was secured by a mortgage on October 30, 1991 in favor of TLD, and encumbered several parcels of real property of approximately 318 acres located in Washington County, Minnesota. In 1998, Amtrust was assigned the mortgagee's interest in the Mortgage.

Plaintiff Amtrust brought suit in November 2000 to foreclose on the property based on Mr.

FILED 5-8-03
RICHARD D. SLETTEN CLERK
JUDGMENT ENTD
DEPUTY CLERK

Larson's failure to make payments. On December 18, 2002 Judge David Doty entered a judgment of foreclosure of the Amtrust Mortgage and against the property, in favor of Amtrust. The Order authorized Amtrust to foreclose its mortgage interest in the property in accordance with the Amtrust Mortgage for the full amount due under the Amtrust Mortgage at the time of the foreclosure sale. As of October 1, 2002, the full amount due under the Amtrust Mortgage, including unpaid principal and accrued interest was $326,727.48. Judge Doty also ordered that Amtrust was entitled to all expenses incurred by Amtrust in enforcing its rights under the Amtrust Mortgage, including reasonable attorneys' fees under the mortgage. The mortgage provided "Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees."

## II. DISCUSSION

### A. FEES INCURRED BY THE ELWORTHY FIRM

Amtrust was represented by two law firms in this case, the firm of Elworthy & Marshall (Elworthy), who operated as a general counsel for Amtrust, and Fabyanske, Westra & Hart (Fabyanske) who worked as local counsel. Amtrust requests fees and expenses of $349,442.35 for the Fabyanske firm and $102,998 for the Elworthy firm. Mary Giese, the managing director of Amtrust states in her affidavit that Amtrust paid the Elworthy firm $519,652 in time charges and $78,892.14 in fees. Only the Fabyanske firm, however, has provided an affidavit detailing the hours spent on the case and the costs incurred. The Elworthy firm refused to provide an affidavit in support of Amtrust's Motion for fees because it claims a conflict of interest with Amtrust. Elworthy has not explained what the conflict is, and Amtrust doesn't know why Elworthy withdrew from the case. The $102,998 that is requested in the motion for the work of the Elworthy firm is for charges

that Mr. Ratelle, an attorney for Fabyanske, could specifically identify and confirm were performed by Elworthy.

It is standard practice that motions for attorneys' fees be supported by an affidavit detailing the specific activities spent working on the case. A party seeking an award of fees needs to submit evidence supporting the hours worked and rates claimed. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). If a party does not adequately document their hours, a district court may reduce the award accordingly. See id. Furthermore, Judge Doty in his December 18, 2002 foreclosure order required that Amtrust's fee motion be supported by an affidavit. Without an affidavit, this Court cannot ascertain whether the fees were reasonable or confirm that the fees requested were for work actually performed on behalf of Amtrust's case against Mr. Larson. Because the Elworthy firm did not provide an affidavit itemizing their costs and fees, this Court finds that there is not sufficient evidence to support a fee award for the work done by the Elworthy firm. Nor is Amtrust entitled to fees for the Elworthy firm that are set forth in the affidavit of Mr. Ratelle on behalf of the Fabyanske firm.

**B. FEES FOR INVESTIGATING IF THE MORTGAGE WAS PAID**

Amtrust seeks fees for numerous tasks associated with the litigation of the mortgage foreclosure. One category of fees that Amtrust is seeking is for some of the investigatory work the lawyers completed to sort out whether or not the mortgage had been paid. After Amtrust sent Mr. Larson a demand letter, Mr. Larson responded by saying that the mortgage had been paid when TLD liquidated the assets of Mr. Larson's prior company, Pacific, Pool, & Patio. Amtrust had to spend over $9,000 to investigate these claims because Amtrust had been assigned the mortgage by TLD. There was a problem determining whether or not the mortgage had been paid because the person

with the most knowledge about the loan between Mr. Larson and TLD was deceased, Gino D'Amalfi. Thus, counsel for Amtrust traveled to Texas, where TLD's records were located, to examine the records and determine whether or not Mr. Larson had paid the mortgage in full or not.

Amtrust is only entitled to attorneys' fees for pursuing remedies under the mortgage. The fees investigating the status of the Amtrust mortgage in Texas were not incurred in pursuit of remedies under the mortgage, but to determine if the plaintiffs even had a remedy. The fees were not incurred because Mr. Larson refused to pay, but rather the fees were generated by the fact that the person with knowledge of the TLD transactions with Mr. Larson had died. Thus, Amtrust is not entitled to recover fees for certain time entries regarding the preliminary investigation of whether Amtrust even had a remedy under the mortgage. This court will deduct from Amtrust's requested fees, those expenses incurred investigating whether or not the mortgage was paid by Mr. Larson, including: calls to Peggy Carnahan, the president of TLD at that time; calls to Sharla Meyers, TLD's counsel; review of TLD's documents; and interviews with witnesses who had knowledge of the liquidation sales by TLD, Clifford Gibbs, Richard McCrillis, and Harry Meyers. Therefore, this Court will not allow fees for the entries in the Ratelle affidavit dated July 18, 2000; September 5 and 21, 2000; October 11, 12, 18, 20, 22-25, for a total of 40.05 hours and $9,338.75 in fees. The Ratelle affidavit and Amtrust's brief in this motion request fees in the amount of $320,655.65. After deducting the $9,338.75 in investigatory fees, the remaining fees equal $311,316.90.

### C. FEE LIMITS AND AMOUNTS

#### 1. Minnesota Statutory Limits on Attorney's Fees

Mr. Larson contends that Amtrust's attorneys' fees are limited by Minn. Stat. § 582.01, subd. 1. Minn. Stat. § 582.01, subd. 1 provides monetary limits on contractual fees in foreclosures by

advertisement. Subd. 2 applies to foreclosures by action, and states that the court shall establish the amount of attorney's fees in cases of foreclosure by action. Mr. Larson's suggestion that 582.01, subd. 1 should somehow be read to also limit foreclosures by action under subd. 2 is without merit. The statutory limits for attorney's fees in foreclosures by advertisement are inapplicable to the instant foreclosure by action.

**2. Contractual Limit on Attorney's Fees in the Secured Note**

Mr. Larson also contends that the parties contracted to limit any attorneys' fees to ten percent of all amounts due. The secured note in this case stated that if proceedings were instituted on the note for collection, then the Mr. Larson would pay all costs of collection and enforcement, "including reasonable attorney's fees and court costs, in addition to other amounts due. Reasonable attorney's fees shall be 10% of all amounts due *unless either party pleads otherwise*." (emphasis supplied). Amtrust's fees Motion is properly considered a pleading otherwise. Even though the parties agreed to limit attorneys' fees to ten percent, there was an exception to the agreement when either party submitted a pleading to the contrary. Thus, the secured note does not otherwise limit the attorneys' fees to be awarded to Amtrust.

**3. Reasonableness of the Remaining Attorney's Fees**

The starting point for determining reasonable attorneys' fees is the lodestar figure or the number of hours reasonably expended on the case multiplied by a reasonable hourly rate. See Hensley, 461 U.S. at 433; Warren v. Prejean, 301 F.3d 893, 904 (8th Cir. 2002). This court has examined the affidavit of Mr. Ratelle and concludes that the remaining attorneys' fees of $311,316.90 are reasonable and that the firm charged a reasonable hourly rate. Amtrust was successful at trial, Judge Doty awarded the plaintiffs $326,727.48. Contrary to Defendant's

suggestion, this case was more than a simple mortgage foreclosure. The litigation raised issues under the Uniform Commercial Code, special foreclosure provisions for agricultural property, slander of title, laches, etc. Finally, the time and effort spent on the case were reasonable given the complexity of the issues.

**4. Costs and Legal Research**

Amtrust claims costs or expenses in the amount of $28,786.70 for copy costs, messenger services etc. Computer-assisted research charges, such as Westlaw charges, are a component of the attorneys' fees and therefore cannot be independently assessed as an item of cost in addition to the attorneys' fee award. See Standley v. Chilhowee R-IV School Dist., 5 F.3d 319, 325 (8th Cir. 1993); Leftwich v. Harris-Stowe State College, 702 F.2d 686, 695 (8th Cir. 1983). While the affidavit claims to deduct computerized legal research charges in the amount of $3,207.10, the actual charges for computerized legal research (Westlaw and/or Lexis) as set forth in Exhibit B to the affidavit of Mr. Ratelle come to $8,534.76. The total costs enumerated in the affidavit equal $31,993.80. Thus, the costs that Amtrust are entitled to after the computerized legal research charges are subtracted equal $23,459.04.

## IV. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for an Award of Attorneys' Fees [#192] be **GRANTED in part** and **DENIED in part** as follows:

1. To the extent the Motion requests fees incurred by the Elworthy firm the Motion should be **DENIED**. Amtrust is not entitled to the $102,998.00 in fees and costs attributed to the Elworthy firm without an affidavit from one of the attorneys at that firm.

2. To the extent the Motion seeks fees for investigating whether the mortgage was paid by Mr. Larson to TLD, the Motion should be **DENIED** because the investigations were not in pursuit of remedies under the mortgage but investigating the knowledge of one of TLD's deceased accountants. $9,338.75 of the fees requested in the Ratelle affidavit will be deducted from the award of attorneys' fees.

3. To the extent the Motion requests reimbursement for costs, the Motion should be **GRANTED in part** and **DENIED in part**. Amtrust should be granted the requested costs, but not for charges for computerized research.

4. In all other respects the Motion should be **GRANTED**. Amtrust is entitled to costs and fees in the amount of $334,775.94. This figure represents the $23,459.04 in costs or expenses plus attorneys' fees in the amount of $311,316.90.

Dated: May 7, 2003

Franklin L. Noel
Franklin L. Noel
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, within ten days of service of this Report and Recommendation, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service of the objections. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.