# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

Nos. 03-2867/03-2971
00 - 2615 DSD/FLN

| | | |
|---|---|---|
| Amtrust, Incorporated, a Wyoming Corporation, as Trustee of the Lindana Amthor Bolanos Texas Trust, | * | |
| Appellee/Cross-Appellant, | * | Appeal from the United States District Court for the District of Minnesota. |
| v. | * | |
| Roger C. Larson, individually, | * | |
| Appellant/Cross-Appellee. | * | |

Submitted: June 14, 2004
Filed: November 4, 2004

Before SMITH, BEAM, and COLLOTON, Circuit Judges.

BEAM, Circuit Judge.

Roger Larson appeals the district court's[1] entry of judgment against him in this mortgage foreclosure case. Amtrust cross-appeals the amount of the award. We affirm.

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

## I. BACKGROUND

In May 1991, Larson received a secured loan of $275,000 from Tawakoni Land Development (TLD), to help with cash flow needs of his struggling business, Pacific Pool and Patio (PPP). The loan was secured by PPP assets. When the business continued to founder, Larson gave TLD a mortgage on his real property as additional security. PPP went into Chapter 7 bankruptcy shortly thereafter, and the business inventory and assets were to be sold to help cover the loan. One of Larson's employees conducted an asset sale, and Larson delivered the proceeds of this sale to TLD's agent in Minnesota. All of the assets were not sold at this first sale, however, and by summer of 1992, the continuing costs of liquidating collateral exceeded the potential sales proceeds. Thus, the remaining collateral was shipped to Texas and stored in a warehouse.

TLD sent the Chapter 7 bankruptcy trustee, Brian Leonard, an accounting on November 2, 1992, stating that after all of the assets in Texas were sold under a best-case scenario, Larson would still be liable for $172,760 plus interest and attorney fees. Three days after receiving this letter, Leonard prepared a Notice of Abandonment (Notice), stating that the deficiency balance was $159,885.44. There was evidence at trial that none of the assets in Texas were ever sold. Larson testified, however, that he was informed by representatives of TLD that the deficiency balance was taken care of following the asset liquidation.

TLD assigned Amtrust its interest in the loan in 1998. In 2000, Amtrust sent Larson notice that it was the assignee of the mortgage, and that with 13.5% yearly interest, he owed Amtrust over $500,000. Complicating matters, in July 1993 after all efforts at liquidation had been exhausted, Larson gave a sworn statement to the IRS for an offer-in-compromise that he still owed TLD approximately $300,000. And, in 1999, Larson's attorney sent a letter to the Minnesota Department of

Economic Security stating that Larson owed TLD approximately $500,000 at that time.

Amtrust commenced this action, and eventually moved for summary judgment based upon Larson's sworn statements to the IRS and the letter to the State of Minnesota. Larson asserted various counterclaims against Amtrust, but they have since been dismissed. In the course of the litigation, Amtrust also demanded a jury trial on those counterclaims. The district court denied summary judgment, granted the jury trial request, and after the counterclaims were dismissed, Amtrust sought to try the case without a jury. The district court denied this motion, but stated in its order that it reserved the right to consider the jury advisory if the court concluded there was no right to a jury trial.

The jury entered judgment for Amtrust, but only for $108,385.44, and Amtrust asked for a new trial. The district court denied this motion, but declared that the jury's verdict was advisory only, vacated its former judgment, and ordered judgment for Amtrust in the amount of $326,727.48. The court said that it adopted the jury's finding for the principal amount, and added prejudgment interest. Amtrust then filed for attorney fees and was awarded an additional $350,065.94 in fees and costs. Both parties timely appeal various aspects of the district court's final order.

## II. DISCUSSION

The district court's decision to deny summary judgment is reviewed de novo, Top of Iowa Coop. v. Schewe, 324 F.3d 627, 631 (8th Cir. 2003), and its rulings on admissibility of trial evidence are reviewed for an abuse of discretion, Shelton v. Consumer Prods. Safety Comm'n, 277 F.3d 998, 1009 (8th Cir.), cert. denied, 537 U.S. 1000 (2002). We review the district court's factual findings for clear error. Cook v. Nebraska Public Power Dist., 171 F.3d 626, 630 (8th Cir. 1999).

**A. Larson's Appeal**

Larson argues he was prejudiced when the district court relegated the jury's verdict to advisory status, and in particular, complains that the district court declared the jury advisory at a prejudicially late stage in the proceedings–after the jury had rendered its verdict. Because there was no entitlement to a jury as a matter of right in this mortgage foreclosure case, Mile High Indus. v. Cohen, 222 F.3d 845, 856 (10th Cir. 2000), we review the decision to declare the jury advisory for an abuse of discretion. Gragg v. City of Omaha, 20 F.3d 357, 358 (8th Cir. 1994) (per curiam) (holding that when there is no jury as of right, abuse of discretion standard applies to court's decision to declare jury advisory after the trial's commencement).

Here, the district court clearly informed the parties at the pretrial conference that it might use the jury as an advisory jury. This adequately prepared Larson for the possibility that the jury would not ultimately decide his case. We find the district court did not abuse its discretion in treating the jury as advisory in these circumstances. Even assuming that the district court erred in declaring the jury advisory, Larson was not actually prejudiced by the district court's treatment of the jury as advisory. See Indiana Lumbermens Mut. Ins. Co. v. Timberland Pallet and Lumber Co., 195 F.3d 368, 375-76 (8th Cir. 1999) (holding that appellant was not prejudiced by court's incorrect dismissal of jury and treatment of its verdict as advisory). The district court awarded Amtrust $108,385.44 in principal, plus $218,342.04 in interest, for a total award of $326,727.48. The jury had awarded Amtrust $108,385.44. As it expressly noted, the district court simply adopted the jury's finding with regard to principal, and awarded prejudgment interest. Under these circumstances, Larson cannot show he was prejudiced by the district court's decision to declare the jury advisory, because as we will explain shortly, Amtrust was entitled to prejudgment interest.

Larson also complains about the amount of interest the district court awarded. Prejudgment interest should generally be awarded, absent exceptional circumstances, such as a claimant's delay tactics, bad faith or assertion of frivolous claims. United States ex rel. Bernard v. Casino Magic Corp., 384 F.3d 510, 516 (8th Cir. 2004); see Simeone v. First Bank Nat'l Ass'n, 73 F.3d 184, 190-91 (8th Cir. 1996) (holding that a trial court's authority to award prejudgment interest is controlled by statute[2] and that it is a proper element of damages). The district court correctly rejected Larson's argument that the jury's award of $108,385.44 already included interest. The record simply does not support this contention. Nor does the record reveal that Amtrust engaged in any of the aforementioned exceptional circumstances sufficient to deny prejudgment interest. We therefore find the district court did not err in its decision to award prejudgment interest, or in its interest calculation. We have reviewed Larson's remaining contentions and find them to be without merit.

**B. Amtrust's Cross-Appeal**

Amtrust argues that the district court improperly admitted the Notice into evidence, and objected to its admission at trial because of purported deficiencies in foundation and hearsay. With regard to foundation, Amtrust argues that the Notice was not admissible as a business or public record. However, we find that the Notice has adequate foundation as a public record. Fed. R. Evid. 803(8) provides,

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law . . . or (C) in civil actions and proceedings . . . factual findings resulting from an investigation made pursuant to authority granted by law.

---

[2]Minn. Stat. Ann. § 549.09.

The Notice was filed by an uninterested party, the bankruptcy trustee, as part of his official duties prescribed by law. The Notice very possibly meets both parts (B) and (C), but clearly meets part (C) of the rule as a finding of fact. Amtrust does not argue that the Notice is a fake, or was not really filed in Larson's bankruptcy proceedings. Instead, Amtrust takes issue with the content of the Notice. Amtrust argues that the notice is untrustworthy because it contains secondary hearsay. Leonard did not testify at trial, and the report itself does not specifically indicate who supplied Leonard with the accounting of the sale proceeds, nor are the methods used to calculate the final figures disclosed.

Rule 803(8) indicates that public records are admissible "unless the sources of information or other circumstances indicate lack of trustworthiness." Fed. R. Evid. 803(8). In Kehm v. Proctor & Gamble Mfg. Co., 724 F.2d 613 (8th Cir. 1983), we noted that the public records exception to the hearsay rule was created with the assumption that a public official will properly perform his duties, but might not remember performing them after the fact. Id. at 618. "The rule assumes admissibility in the first instance but with ample provision for escape if sufficient negative factors are present. The burden is on the party opposing admission to prove the report's untrustworthiness." Id. (quotations and citations omitted).

As the party opposing the Notice's admission into evidence, Amtrust did not meet the burden of establishing the Notice's untrustworthiness. At trial, Amtrust simply objected on the basis of foundation and hearsay, but did not request to be heard further on the issue. None of the arguments Amtrust has presented to this court about untrustworthiness were made to the district court, either at the time of the objection or in the memorandum[3] in support of the motion for new trial.

---

[3]Several points are worth noting with regard to Amtrust's memorandum in support of the motion for new trial. First, despite the fact that Amtrust had the burden of showing untrustworthiness to the district court, Amtrust did not include this memorandum as part of its Appendix on appeal. Second, Amtrust does make similar

We also find that Amtrust's appellate arguments about untrustworthiness are unavailing. Amtrust argues that the Notice indicates a lack of trustworthiness because it did not disclose the sources of Leonard's information, and also because Leonard, as bankruptcy trustee, had no particular reason to be accurate in his calculations. Amtrust also argues that testimony of other witnesses at trial establishes the unreliability of the Notice, because these witnesses contradicted information contained in the Notice. While those may be persuasive arguments if applicable in this situation, they address the *weight* to be given the Notice, rather than its *admissibility*. See Shelton, 277 F.3d at 1010-11 (distinguishing between weight of evidence and admissibility of evidence with regard to business and public records exception). Amtrust's disagreement with how the bankruptcy trustee, an officer of the court, came to his conclusions in the Notice does not make the Notice sufficiently untrustworthy to preclude admissibility.

Further, Amtrust's argument that the Notice was inadmissible because it contained secondary hearsay is without merit. The record indicates that the genesis of the bankruptcy trustee's finding is the accounting sent from TLD to the trustee. As TLD's successor-in-interest, Amtrust is saddled with that admission. Although there is a *de minimis* difference between TLD's accounting letter and the trustee's final factual conclusion, Amtrust cannot be heard to argue that information *it supplied* is untrustworthy.[4]

---

arguments about the Notice's suspect *content* in the motion for new trial and on appeal to this court. However, Amtrust does not cite to Rule 803(8), or even mention the word "untrustworthy" in the memorandum in support of the motion for new trial. Nevertheless, even considering Amtrust's arguments about the Notice's content in the memorandum, Amtrust did not meet its burden of showing untrustworthiness.

[4]As noted previously, Amtrust, through assignment, is TLD's successor-in-interest. Amtrust's brief notes that Harry Myers, an officer of TLD, sent (bankruptcy trustee) Leonard a letter indicating that based upon assumed asset liquidations by TLD, Larson would "owe TLD $172,760.87 plus additional interest and attorneys

Even so, Amtrust argues that in spite of this admission by its predecessor-in-interest, the Notice of Abandonment wrongly gives Larson credit for inventory sales which did not occur, and argues that the district court (and the advisory jury) obviously used this flawed document to calculate the principal owed to Amtrust. The district court's factual findings are reversible only upon a finding of clear error. Cook, 171 F.3d at 630. Our review of the record reveals that the district court did not clearly err. There certainly was testimony that none of the inventory stored in Texas was sold, but Larson also testified that he was given the impression that the result of all the liquidation efforts covered the balance of his loan. The district court's decision, as the trier of fact, to somewhat strike a balance between these competing contentions cannot be viewed as clear error.

Finally, Amtrust argues that Larson "created" an issue of material fact through deposition testimony which contradicted prior sworn statements to the IRS and the Minnesota Department of Economic Security regarding the amount of his indebtedness. Amtrust contends Larson should have been estopped from making an argument contradicting the amount of debt which he represented to those agencies. Accordingly, Amtrust maintains that the district court should have granted summary judgment in its favor based on Larson's prior sworn statements.

The doctrine of judicial estoppel prevents a party from taking a position during litigation which is contrary to one taken in a prior judicial or quasi-judicial proceeding. The underlying purpose is to protect the judicial process. Leonard v. Southwestern Bell Corp. Disability Income Plan, 341 F.3d 696, 702 (8th Cir. 2003). Judicial estoppel is only available as a means to bar inconsistent statements if the

---

fees. Three days later . . . Leonard prepared [the disputed] Notice of Abandonment for filing with the United States Bankruptcy Court." Amtrust's Brief at 6-7. So, at best for Amtrust, the notice is prejudicial to Amtrust in the amount of only $12,875.43 less than the stipulated figure. We believe there is sufficient play in the evidentiary joints to account for this minor discrepancy.

prior statements were adopted by a court, made in a judicial proceeding, or made in the same or related litigation. Id. Equitable estoppel precludes a party from denying previously asserted facts if the injured party relies upon that information. Total Petroleum, Inc. v. Davis, 822 F.2d 734, 737 (8th Cir. 1987). "Quasi-estoppel" has been invoked by various courts to estop parties from asserting a position in judicial proceedings different than what was reported on their income tax returns. E.g., In re Robb, 23 F.3d 895, 898-99 (4th Cir. 1994) (bankruptcy proceeding).

Larson contends that his statements to the IRS and the state were merely recitations that he was subject to a recorded mortgage, not a statement under oath about his indebtedness. While Larson's statements are close to being inconsistent, it was reasonable for the district court, viewing the facts in the light most favorable to Larson, to accept as a disputed fact Larson's explanation of why he made those statements. Further, we doubt whether the statements to either the IRS or the State of Minnesota were made in the context of judicial or quasi-judicial proceedings. Both statements were made as Larson attempted to negotiate a settlement of his tax liability to the federal government and the State of Minnesota. This also distinguishes the situation from Robb, where the parties had actually *filed* federal income tax returns with information inconsistent with positions later taken in the bankruptcy case. Amtrust cannot assert equitable estoppel because none of the prior representations were made to Amtrust. Larson's prior statements to government officials are troubling. However, in light of the district court's mandate to view the facts in the light most favorable to Larson, the court did not err in denying Amtrust's motion for summary judgment.

## III. CONCLUSION

We affirm the district court in all respects.

---

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans

**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**
THOMAS F. EAGLETON COURT HOUSE
ROOM 24.329
111 S. 10TH STREET
ST. LOUIS, MISSOURI 63102

MICHAEL E. GANS
Clerk of Court

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

December 28, 2004

Mr. Richard Sletten
Clerk
U.S. DISTRICT COURT, MINNESOTA
202 U.S. Courthouse
300 S. Fourth Street
Minneapolis, MN 55415

RECEIVED
BY U.S. MAIL
2004 DEC 30 AM 9:17
CLERK, U.S. DIST COURT
MINNEAPOLIS, MN

Re: 03-2867 Amtrust, Inc. vs. Roger C. Larson
03-2971 Amtrust, Inc. vs. Roger C. Larson

Dear Clerk:

The mandate of this Court is being sent to the clerk of the district court, together with a receipt. The clerk of the district court is requested to sign, date, and return the receipt to this office.

Any district court records in this court's possession will be returned shortly.

(5175-010199)

Sincerely,

Michael E. Gans
Clerk of Court

dms
Enclosure

(LETTER FOR INFORMATIONAL PURPOSES ONLY)

---

cc: Honorable David S. Doty
Honorable David S. Doty
Paul Laurin Ratelle
Michael Rosow
Don Charles Aldrich
Keith Donald Johnson

District Court/Agency Case Number(s): CIV 00-2615 DSD/FLN